Garry, J.
Appeals (1) from a judgment of the County Court of Sullivan County (McGuire, J.), rendered April 8, 2011, upon a verdict convicting defendant of the crime of sexual abuse in the second degree, and (2) from an order of said court, entered June 9, 2011, which classified defendant as a risk level three sex offender pursuant to the Sex Offender Registration Act.
Defendant was charged in a seven-count indictment with crimes arising from his alleged sexual abuse of a child, and thereafter pleaded guilty to two of the charges. On appeal, this Court reversed the judgment of conviction and vacated defendant’s plea (69 AD3d 1231 [2010]). Following a jury trial, he was convicted of sexual abuse in the second degree and sentenced to time served. County Court conducted a hearing pursuant to the Sex Offender Registration Act (see Correction Law art 6-C [hereinafter SORA]) and issued an order determining that defendant was a risk level three sex offender. He appeals from that order and from the judgment of conviction.
Defendant challenges his conviction on the sole ground that County Court erred by dismissing a sworn juror (see CPL 270.35). During the trial, a juror advised the court that, after hearing the testimony of several witnesses, he had belatedly realized that he might have a familial relationship with defendant. After a detailed inquiry, the court determined that the juror was related to defendant and also to defendant’s wife — a prospective witness — in such a manner that he would have been *1041 subject to a challenge for cause if these relationships had been known before he was sworn (see CPL 270.20 [1] [c]; People v Walters, 12 AD3d 953, 954 [2004]). Defendant now contends that the court did not conduct a sufficient inquiry into the effect of these relationships on the juror’s impartiality (see People v Buford, 69 NY2d 290, 299 [1987]), but as he neither raised this claim at trial nor otherwise objected to the inquiry, the issue is unpreserved (see People v Hicks, 6 NY3d 737, 739 [2005]; People v Thompson, 92 AD3d 1139, 1141 [2012], lv granted 19 NY3d 977 [2012]; People v Cecunjanin, 67 AD3d 1072, 1077 [2009] , mod on other grounds 16 NY3d 488 [2011]; People v Kelly, 65 AD3d 714, 715 [2009], lv denied 13 NY3d 860 [2009]). We note that the court repeatedly offered to permit counsel to research and brief the legal issues overnight as an alternative to dismissing the juror, but defense counsel did not avail himself of this option. Instead, after extensive discussion with the prosecutor and the court, consultation with defendant, and a final reiteration from the court of the opportunity to brief the issues before a determination was made, counsel consented to the juror’s removal stating, “[W]e are satisfied with the law as recited. We’re ready to proceed.” The record thus reveals that the juror was not removed “over defendant’s objection” and no modification in the interest of justice is warranted (People v Buford, 69 NY2d at 298; see People v Viera, 75 AD3d 926, 927 [2010] ).
Defendant next contends that County Court improperly conducted the SORA hearing without obtaining a recommendation from the Board of Examiners of Sex Offenders. As a result of defendant’s previous guilty plea and appeal, he had been incarcerated in the Sullivan County Jail for approximately 44 months prior to his conviction, in February 2011, of a class A misdemeanor — which carries a maximum sentence of one year. The court thus released him immediately after the verdict and, in April 2011, sentenced him to time served. Thereafter, the People submitted a risk assessment instrument (hereinafter RAI) completed by the Probation Department and, as recommended in the RAI, requested a level three risk assessment as an upward departure from a presumptive risk level two assessment. At the SORA hearing conducted thereafter in May 2011, defense counsel objected that the RAI should have been completed by the Board.[1] After adjourning the hearing to address this claim, the court issued a decision interpreting the *1042 pertinent provisions of SORA to permit a judicial assessment of defendant’s risk level without the Board’s involvement. We reject defendant’s contention that the court erred in this determination.
The SORA statutory scheme sets out separate procedures for judicial determination of a sex offender’s risk level depending upon the nature of the offender’s sentence. When the offender is “released on probation or discharged upon payment of a fine, conditional discharge or unconditional discharge,” the court makes the risk level determination without Board involvement, following the District Attorney’s submission of a statement of the risk level sought by the People (Correction Law § 168-d [3]; see Mark Bonacquist, 2002 Practice Commentaries, McKinney’s Cons Laws of NY, Book 10B, Correction Law art 6-C at 270). When the offender is incarcerated, the court makes the determination “after receiving a recommendation from the [Bjoard” and before the offender’s “discharge, parole, release to post-release supervision or release” (Correction Law § 168-n [1]; see Correction Law § 168-Z [6]). Here, neither of these statutory provisions was directly applicable. Defendant was not released under any of the conditions specified in Correction Law § 168-d (3), but was instead sentenced to a term of incarceration; however, the statutory procedures for obtaining a Board recommendation before his discharge could not be followed as his incarceration ended on the day of his conviction (see Correction Law §§ 168-Z [6]; 168-n [1], [2]). In these exceptional circumstances, County Court was thus required to interpret SORA to determine the most appropriate procedure.
Although SORA charges the Board with responsibility for making a risk level recommendation relative to incarcerated offenders, the ultimate responsibility for the risk level determination is vested in the sentencing court, which “ ‘in the exercise of its discretion, may depart from [the Board’s] recommendation and determine the sex offender’s risk level based upon the facts and circumstances that appear in the record’ ” (Matter of VanDover v Czajka, 276 AD2d 945, 946 [2000], quoting Matter of New York State Bd. of Examiners of Sex Offenders v Ransom, 249 AD2d 891, 892 [1998]; see People v Johnson, 11 NY3d 416, 421 [2008]). In our view, this judicial obligation necessarily includes the authority to determine the appropriate procedure for a risk level determination where, as here, the circumstances are not fully addressed by the SORA statutory scheme. This conclusion is supported by the statutory provisions addressing failures by the Board to complete its statutory obligation; where the Board fails to issue a timely recommendation, SORA *1043 provides that the court must nonetheless make a risk level determination and, if it cannot do so before the offender is discharged, must “expeditiously complete the hearing and issue its determination” after his or her release (Correction Law § 168-l [8]). In effect, that is the procedure that County Court followed here. Likewise, the Board’s erroneous completion of an RAI may be harmless if the court reviews the relevant evidence and bases its determination of the defendant’s risk level on clear and convincing evidence (see People v Carpenter, 63 AD3d 1320, 1322 [2009], Iv denied 13 NY3d 704 [2009]; People v Mc-Clelland, 38 AD3d 1274, 1275 [2007]; People v Sanchez, 20 AD3d 693, 694 [2005]). In the unusual circumstances presented here, we find that County Court did not exceed its statutory authority in deciding that the appropriate procedures for determining defendant’s risk level were those established by Correction Law § 168-d (3) for discharged offenders.
The RAI completed by the Probation Department assessed 95 points against defendant, resulting in a presumptive risk level two classification, and recommended an upward departure to level three. Defendant challenges County Court’s decision to designate him as a risk level three sex offender, and asserts that he should instead have been classified at risk level one. We find that 10 points were properly assessed for defendant’s failure to take responsibility for his actions, as he continued to deny that he had committed any crime following his conviction.[2] This risk factor was thus supported by clear and convincing evidence (see People v Rogowski, 96 AD3d 1113, 1114 [2012]; People v Legall, 63 AD3d 1305, 1306 [2009], lv denied 13 NY3d 706 [2009]).
We further reject defendant’s claim that the assessment of 15 points for his release without supervision was punitive, as he had already served a 44-month term of incarceration. The risk assessment guidelines are not designed to punish, but “to assess the risk of a repeat offense by such sex offender and the threat posed to the public safety” (Correction Law § 168-l [5]; see People v Burke, 68 AD3d 1175, 1176 [2009]). The guidelines emphasize the importance of strict supervision to avoid repeat offenses when sex offenders are released into the community (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 17 [2006]). As there is no dispute that defendant was under no such form of supervision following his *1044 release, the proper score was assigned to this factor (see People v Ramirez, 53 AD3d 990, 991 [2008], lv denied 11 NY3d 710 [2008]). Defendant raises no challenge to the remaining assessments recommended in the RAI; thus, his classification as a risk level two sex offender is supported by clear and convincing evidence.
However, we agree with defendant that County Court erred in assessing additional points that resulted in his classification as a risk level three sex offender. In its written decision, the court assessed 20 points based upon defendant’s prior victims, relative to sexual offenses occurring in the 1980s. However, the guidelines specify that this category focuses upon the number of victims underlying the instant conviction (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 10 [2006]). The People did not claim that the current offense involved multiple victims, and defendant had already been assessed the maximum number of points for his prior criminal history. Further, County Court assessed 20 points under risk factor 7 for defendant’s relationship with the victim. This factor is directed at circumstances where the offender and the victim are strangers, where the offender established or promoted the relationship for the purpose of victimization, or where a professional relationship was abused, as such circumstances present “a heightened concern for public safety and need for community notification” (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 12 [2006]; see People v Duart, 84 AD3d 908, 909 [2011], lv dismissed 17 NY3d 916 [2011]; People v Cuesta, 65 AD3d 1113, 1114 [2009]; People v Milton, 55 AD3d 1073, 1073 [2008]). As these circumstances were not presented, these points were improperly assessed (see People v Fisher, 22 AD3d 358, 359 [2005]).
Peters, P.J., Lahtinen and Stein, JJ., concur. Ordered that the judgment is affirmed. Ordered that the order is reversed, on the law, without costs, and defendant is classified as a risk level two sex offender under the Sex Offender Registration Act.

. Notably, defendant did not previously object when, during the April 2011 sentencing, County Court outlined its plan to have the RAI be prepared by the Probation Department.

. Notably, defendant had previously given police a sworn statement admitting that sexual contact had occurred, but claiming that the victim — then aged 11 — had initiated it. The presentence investigation report revealed that in his two previous sexual offenses, he had likewise initially admitted the conduct, blamed it on his child victims, and later recanted his admissions.